**UNITED STATES of America**

v.

**Ombey MOBLEY, Appellant.**

No. 90–3832.

United States Court of Appeals,
Third Circuit.

Argued May 9, 1991.

Decided Feb. 14, 1992.

William R. Denny (argued), Potter Anderson & Corroon, Wilmington, Del., for appellant.

William C. Carpenter, Jr., U.S. Atty., Thomas V. McDonough (argued), Asst. U.S. Atty., Wilmington, Del., for appellee.

Before MANSMANN, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant, Ombey Mobley, pleaded guilty to violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, and received a two level enhancement under United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(b)(2) (Nov. 1990), because his gun was stolen. He challenges the Guidelines' enhancement on several statutory and constitutional grounds, with the unifying argument being that the government must show he knew the gun was stolen to enhance his sentence. We will affirm the judgment of sentence.

### I.

The facts are simple. Mobley and several friends were driving northward on Interstate 95 in Delaware when they were stopped for speeding. After a Delaware State Police Officer stopped the car and got consent to search it, he did so. He found ammunition on the front seat and $6,000 in cash in the pocket of one of Mobley's friends. Searching further, the officer found a handgun under Mobley's seat. He arrested Mobley.

Mobley admitted he and another passenger bought the gun for $160 in Columbia, South Carolina, from a drug dealer named "Keith". He admitted that the gun was operable, that he knew it was in the car, and said he bought it "to protect us." The gun was stolen though there was no objective evidence that Mobley knew it.

Mobley had a criminal record for drug and firearm offenses. He pleaded guilty to possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Section 922(g)(1) provides: "It shall be unlawful for any person—who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport any firearm or ammunition in interstate or foreign commerce."

At sentencing the district court found Mobley's criminal history category to be IV. It applied U.S.S.G. § 2K2.1, "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition," and found his base offense level to be 12. The court subtracted 2 levels for affirmative acceptance of responsibility, under § 3E1.1, and added 2 levels for possessing a stolen gun, under § 2K2.1(b)(2). The Guidelines yielded a range of 21 to 27 months, and the court sentenced Mobley to 27 months of incarceration followed by three years of supervised release.

Section 2K2.1(b)(2) provides: "If the firearm was stolen or had an altered or obliterated serial number, increase by 2 levels." The district court did not find that Mobley knew or had reason to know the gun was stolen. Instead it simply applied the enhancement "because the gun was stolen." Mobley challenges this enhancement. He argues principles of statutory construction mandate that we read § 2K2.1(b)(2) to include a scienter element. He further argues that without this scienter requirement, the enhancement violates the Due Process Clause of the Fifth Amendment because it amounts to a new strict liability statute, punishing him without a finding of culpability. We have plenary review of issues of law raised by the application of

the Guidelines. *United States v. Williams*, 917 F.2d 112, 113 (3d Cir.1990).

## II.

■ Whether U.S.S.G. § 2K2.1(b)(2) should be read to imply a scienter requirement is new before this court. Four other courts of appeals have addressed a similar issue. They have concluded that the enhancement is plain on its face and have refused to imply a scienter element. *United States v. Singleton*, 946 F.2d 23 (5th Cir.1991); *United States v. Taylor*, 937 F.2d 676 (D.C.Cir.1991); *United States v. Peoples*, 904 F.2d 23 (9th Cir.1990) (per curiam); *United States v. Anderson*, 886 F.2d 215 (8th Cir.1989) (per curiam). We agree.

Mobley invokes three well established principles of statutory construction that he thinks compel us to infer a knowledge requirement from § 2K2.1(b)(2). They are the rule of lenity, the presumption against strict liability in criminal law, and the principle that requires a statute to be read as a whole and in harmony with others.

■ The rule of lenity succinctly is: Where there is ambiguity in a criminal statute, doubts are resolved in favor of defendant. *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). The rule applies to criminal prohibitions, as well as the penalties. *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). For the rule to apply, the statute must contain an ambiguity. 100 S.Ct. at 2252. Where, however, the statute is clear, the rule may not be used to contravene its plain meaning.

We construe terms of the Guidelines according to their plain meaning. *United States v. Gonzalez*, 918 F.2d 1129, 1139 (3d Cir.1990). Here § 2K2.1(b)(2) unambiguously provides that "[i]f the firearm was stolen" the sentence shall be increased. The requisite ambiguity is absent.

As the Court of Appeals for the District of Columbia Circuit noted, an earlier Guidelines version, § 1B1.3(a)(4), provided that "specific offense characteristics . . . shall be determined on the basis of . . . the de-fendant's state of mind, intent, motive and purpose in committing the offense." *See Taylor*, 937 F.2d at 682. The Sentencing Commission amended this section and omitted the blanket scienter requirement. Section 1B1.3(a)(4) now directs courts to consider the "information specified in the applicable guideline." Here the applicable guideline is § 2K2.1(b)(2); it contains no scienter element.

The Commission recently amended § 2K2.1 and § 2K2.2. The earlier version of § 2K2.1(b)(1) read "if the firearm was stolen or had an altered or obliterated serial number, increase by 1 level." The Commission renumbered and amended this section to increase the level to 2. U.S.S.G. § 2K2.1(b)(2). And the earlier versions of § 2K2.2(b)(1) and § 2K2.3(b)(2)(c) read respectively "If the firearm was stolen or had an altered or obliterated serial number, increase by 1" and "If the defendant *knew or had reason to believe* that a firearm was stolen or had an altered or obliterated serial number, increase by 1." (Emphasis added). The Commission consolidated these sections into new § 2K2.2(b)(2), which now reads "If the firearm was stolen or had an altered or obliterated serial number, increase by 2 levels." In amending these sections, the Commission also added new § 2K2.3, "Receiving, Transporting, Shipping or Transferring a Firearm or Ammunition With Intent to Commit Another Offense, or With Knowledge that It Will be Used in Committing Another Crime." The Commission intended this section to "address transfer of a weapon with *intent or knowledge* that it will be used to commit another offense." U.S.S.G., App. C, at C. 97 (emphasis added).

The Commission has been deliberate when it included a scienter element as other sections confirm. *See, e.g.*, U.S.S.G. § 2K1.3(b)(2) (enhancement when "offense involved explosives that the defendant knew or had reason to believe were stolen"); U.S.S.G. § 3C1.1 (enhancement when "defendant wilfully obstructed or impeded, or attempted to impede, the administration of justice"). It is a fundamental canon of statutory construction that where sections

of a statute do not include a specific term used elsewhere in the statute, the drafters did not wish such a requirement to apply.

Section 2K2.1(b)(2) is clear and unequivocal. We refuse to find ambiguity where none exists to defeat the plain meaning of the Guidelines. *See Bifulco,* 100 S.Ct. at 2252. Because "the touchstone of the rule of lenity is statutory ambiguity," 100 S.Ct. at 2252, the rule does not apply to § 2K2.1(b)(2).

■ Mobley would also have us invoke the presumption against strict liability in criminal law. He argues that a distinction in sentences based solely on the stolen status of the gun is arbitrary and capricious without evidence of scienter. This distinction, he argues, serves none of the purposes of sentencing—retribution, general deterrence, specific deterrence, and rehabilitation—so that § 2K2.1(b)(2) is in discord with the purpose of the Guidelines.

These statutory arguments cannot stand given that the Commission has intentionally imposed strict liability for § 2K2.1(b)(2). Furthermore, § 2K2.1(b)(2) is not in discord with the purposes of the Guidelines because the Guidelines are essentially offense-based and, as such, philosophically justified by a retributivist and, to a lesser extent, a deterrence theory of penology. Mobley's contentions fail, for the enhancement is rationally related to both theories and functions as a regulatory component in Congress' scheme to control gun trade. *See United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

In *Freed* the defendant was indicted for possessing unregistered hand grenades under 26 U.S.C. § 5861(d) (1964), which makes it illegal for any person "to receive or possess a firearm which is not registered to him." The trial court dismissed the indictment because the statute provided no scienter element. The Supreme Court held that the statute required no specific intent because it was "a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act." 91 S.Ct. at 1118. Because

§ 2K2.1(b)(2) also regulates activities affecting public health, safety, and welfare, it requires no scienter element. *See United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (statute regulating adulterated or misbranded drugs); *United States v. Engler,* 806 F.2d 425 (3d Cir.1986) (statute regulating selling of wildlife).

Mobley argues he is neither more culpable nor more dangerous to society with a stolen gun. He overlooks the larger problem. Mobley pleaded guilty to violating 18 U.S.C. § 922(g). Section 922(g) is part of the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1213, amending the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 197. It is not just a statute criminalizing possession of a firearm by convicted felons; it is part of a comprehensive scheme to regulate the movement of firearms. *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) ("the Act clearly appl[ies] to and regulate[s] [ ] sales of a gun"). In *Barrett* the Supreme Court articulated the purpose behind § 922(g):

> The very structure of the Gun Control Act demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from persons Congress classified as potentially irresponsible and dangerous [convicted felons]. These persons are comprehensively barred by the Act from acquiring firearms by any means. Thus, § 922(d) prohibits a licensee from knowingly selling or otherwise disposing of any firearm ... to the same categories of potentially irresponsible persons....
>
> Similarly, § 922(g) prohibits the same categories of potentially irresponsible persons from shipping or transporting any firearm in interstate commerce or, see 18 U.S.C. § 2(b), causing it to be shipped interstate.

96 S.Ct. at 502. Thus § 922(g) has a regulatory role.

Moreover, the penalty it imposes, including U.S.S.G. § 2K2.1(b)(2), advances this role. Altered firearms, for example sawed-

off shotguns, "have few legitimate uses," U.S.S.G. § 2K2.1, commentary, and have most probably been altered to conceal or magnify their deadly potential. Also the trade in guns is monitored for a reason. Registration and verification procedures are imposed largely to combat crime. It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible. Therefore, stolen or altered firearms in the hands of people recognized as irresponsible pose great dangers, and the guideline here reflects this heightened danger.

An examination of 18 U.S.C. § 922(g), § 922(i), § 922(j) and U.S.S.G. § 2K2.1(b)(2) shows how Congress and the Commission regulate the trade in stolen or altered firearms. Together § 922(i) and § 922(j) provide that *any person* who "transport[s]" or "receive[s] ... any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe" it stolen is culpable. In these sections Congress recognized the inherent evil in stolen guns and sought to regulate them. Section 922(g) targets a specific class of individuals—convicted felons. It provides that they shall not possess *any firearm,* regardless of the status of the firearm. So, for instance, if a convicted felon went into a sporting store, bought a shotgun to hunt, and signed all the necessary registration and verification forms, he would still be culpable. And if he obtained such a weapon from a drug dealer in some back street, it is reasonable that he would be more culpable.[1]

Congress promulgated 18 U.S.C. § 922(g) on the premise that convicted felons have a greater propensity to commit crimes using firearms. It therefore categorically sought to remove firearms from their hands. The Commission promulgated U.S.S.G. § 2K2.1(b)(2) on the premise that "stolen firearms are used disproportionately in the commission of crimes." U.S.S.G.

§ 2K2.1(b)(2), commentary. It therefore sought to enhance the sentences of those convicted felons who violate § 922(g) by possessing a stolen gun. The Commission has done nothing more than add two and two.

Thus § 2K2.1(b)(2) advances the overall regulatory scheme. Without empirical evidence, it is safe to say that stolen or pirated guns move in the back alleys and among clandestine meetings of the criminal world. Indeed Mobley admitted that he got his gun from a drug dealer named "Keith" in Columbia, South Carolina. A handgun is the consummate anti-personnel weapon. It is designed to be used against people. It defies reason to believe that there was anything benign in a convicted felon carrying a stolen handgun. Section 2K2.1(b)(2) regulates by punishing and potentially deterring such irregular and pernicious transactions; it rests "on the theory that one would hardly be surprised to learn that possession of [a gun bought from a drug dealer] is not an innocent act," *see Freed,* 91 S.Ct. at 1118. We need not apply the presumption against strict liability.

### III.

█ Mobley contends that without a scienter requirement U.S.S.G. § 2K2.1(b)(2) violates the Due Process Clause of the Fifth Amendment. He argues that the enhancement creates a new statute that punishes him for conduct of which he has not been found guilty. And because the new statute lacks a scienter element, he argues that it eviscerates his due process right "to assure the accurate presentation of information regarding whether he had knowledge or reason to believe that the gun was stolen." Br. 21.

Mobley indulges in nothing more than constitutional wishful thinking. He musters no support by way of reason or precedent. Supreme Court precedent weighs against his argument; no Court of Appeals

---

1. The Guidelines confirm what is intuitive. If the convicted felon possesses a firearm his base offense level is 12. U.S.S.G. § 2K2.1(a)(2). But if he "obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection," his base offense level is decreased by 6. U.S.S.G. § 2K2.1(b)(1).

has adopted his argument; and in fact the Court of Appeals for the Fifth Circuit has flatly rejected it.

■ Mobley confuses the fundamental distinction between conviction and sentencing. Moreover he confuses the distinction among a sentence, a sentence enhancement, and the definition of a crime. In our bifurcated criminal justice process, at the trial stage the accused receives the full panoply of constitutional rights. So for example, the government must prove "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). At the sentencing stage, however, a convicted criminal is entitled to less process than a presumptively innocent accused. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 2419 n. 8, 91 L.Ed.2d 67 (1986). "[S]entencing courts have always operated without constitutionally imposed burdens of proof" when considering the appropriate sentence. 106 S.Ct. at 2419 n. 8. *See* U.S.S.G. § 6A1.3 (court may consider all relevant information, for example specific offense characteristics, that has "sufficient indicia of reliability to support its probable accuracy"). And once convicted, a defendant has a liberty interest in the correct application of the Guidelines within statutory limits, nothing more and nothing less. *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir. 1991) (en banc).

In *McMillan* the Supreme Court held constitutional Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Const. Stat. § 9712 (1982). This statute subjects anyone convicted of certain enumerated felonies to a mandatory minimum sentence of five years if the court finds by a preponderance of evidence that the person "visibly possessed a firearm" during the commission of the offense. It, however, did not alter the statutory maximum penalties for the enumerated felonies. 106 S.Ct. at 2417. The Court concluded: "While visible possession might well have been included as an element of the enumerated offenses, Pennsylvania chose not to redefine those offenses in order to so include it, and *Patterson* teaches that we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties." 106 S.Ct. at 2416 (referring to *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). Thus a state may properly treat "visible possession of a firearm" as a sentencing factor that "comes into play *only after* the defendant has been found guilty of [the crime] beyond a reasonable doubt." 106 S.Ct. at 2416 (emphasis added).

Although *McMillan* decided the constitutionality of state rather than federal law, there is no principled reason why the same due process analysis would not apply in defining federal criminal offenses and penalties. *See United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir.1987) (adopting *McMillan*'s preponderance of evidence standard for federal sentences); *United States v. Wilson*, 900 F.2d 1350, 1353 (9th Cir.1990) (same).

Before the Guidelines, a sentencing court had broad discretion whether to consider any and all information about a defendant's background or conduct. The Guidelines limit this discretion and give certain sentencing factors a predetermined effect. The Guidelines, however, do not differ analytically from the Pennsylvania statute in *McMillan* for the purpose of this due process scrutiny. In *McMillan* the Pennsylvania legislature "simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm." 106 S.Ct. at 2418. Here the Guidelines simply take one factor that has traditionally been considered by sentencing courts to bear on punishment—the status of the firearm—and dictate the precise weight to be given that factor if the firearm is stolen. U.S.S.G. § 2K2.1(b)(2), commentary ("reviews of actual [pre-Guidelines] cases suggest that this is a factor that tends to result in more severe sentences").

Moreover the guideline here is not arbitrary; it bears a rational relationship to the defendant's culpability. The Commission decided that possessing a stolen gun is a greater evil than possessing one legally purchased. Indeed, the inherent dangers associated with a convicted felon purchasing and owning a gun "makes it reasonable to impute knowledge to the defendant that his conduct was subject to legal restriction." *United States v. Burke,* 888 F.2d 862, 866 (D.C.Cir.1989). One, especially a convicted felon, is thus expected to exercise caution in the purchase of firearms and to inquire as to the gun's origin. One can check easily whether or not a gun has been stolen, and the failure to do so reasonably may add to the purchaser's punishment. The government need not prove that the purchaser possessed actual knowledge of the gun's stolen status to generate the inference for the purpose of sentencing that a buyer of a stolen gun is more culpable than the buyer of a legitimate one. The "backstreet" buyer who contributes financially to a thief's enterprise purchases under conditions which reasonably should alert him to check the gun's legitimacy. We fail to see the constitutional infirmity in discouraging illegal traffic in guns by enhancing the sentence of a convicted felon for possessing a stolen gun. *See McMillan,* 106 S.Ct. at 2419 ("Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime...") (citing *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)).

The *McMillan* Court set forth a due process standard for sentencing factors: the enhancement factor must not (1) alter the maximum penalty available for the crime committed, or (2) negate the presumption of innocence or relieve the prosecution's burden of proving guilt, or (3) create a separate offense calling for a separate penalty. 106 S.Ct. at 2417. Section 2K2.1(b)(2) satisfies this standard.

First, the enhancement does not alter the maximum sentence that Mobley could have received for violating § 922(g). 18 U.S.C. § 924(a)(2) (whoever violates § 922(g) shall be imprisoned not more than 10 years). *See Restrepo,* 946 F.2d at 657 n. 4 (the *McMillan* Court's "reasons for focusing on the statutory maximum as a fixed limit that must not be violated during sentencing do not change even in the context of the Guidelines, where sentence is largely predetermined by the sentencing factor"); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 181 (2d Cir.1990) (same); *United States v. Martinez,* 924 F.2d 209, 211 (11th Cir.1991) (same).

Second, § 2K2.1(b)(2) also does not negate the presumption of innocence or alter the prosecutor's burden of proof at the conviction stage. Had Mobley not pleaded guilty to violating § 922(g), the prosecution would have had to prove each and every element of that offense beyond a reasonable doubt. *McMillan,* 106 S.Ct. at 2417 ("Nor does [the Pennsylvania statute] relieve the prosecution of its burden of proving guilt; [it] only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished.").

Finally, § 2K2.1(b)(2) does not create a separate offense calling for a separate penalty. In *McMillan* the Court concluded that because the Pennsylvania statute does not alter the statutory maximum sentence it operates solely to limit the sentencing court's discretion in selecting a penalty within the available range. 106 S.Ct. at 2417. It thus "ups the ante" for the defendant by raising the minimum sentence that may be imposed within the statutory plan. 106 S.Ct. at 2417. The Court, however, left open the possibility that a sentence enhancement could be improper if it came to be "a tail which wags the dog of the substantive offense": that is, have such a disproportionate impact on the sentence so that it is "really" an element of the offense for which defendant is being punished. 106 S.Ct. at 2419.

That § 2K2.1(b)(2)'s conduct requirement constitutes an element of a separate offense, 18 U.S.C. §§ 922(i) or (j), does not mean that Mobley is being sentenced for a crime for which he was not convicted. This

argument misses the point. Mobley was not charged under §§ 922(i) or (j); he was charged under § 922(g). He was not sentenced for violating §§ 922(i) or (j); he was sentenced for violating § 922(g). Section 2K2.1(b)(2) did not sentence or enhance his sentence for violating §§ 922(i) or (j); it enhanced his sentence for violating § 922(g). The argument "misperceives the distinction between a sentence and a sentence enhancement." *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989) (holding that enhancing a sentence under U.S.S.G. § 2D1.1(b)(1) for weapons possession was not double jeopardy even though defendant was charged and acquitted for weapons possession under 18 U.S.C. § 924(c)(1)).

In *Martinez* the Court of Appeals for the Eleventh Circuit addressed similar arguments. 924 F.2d at 210–11. There the appellant was found guilty of conspiracy to import drugs. The sentencing court imposed a two level enhancement under § 2D1.1(b)(1) because it found that firearms were involved. Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed during the commission of the offense, increase by 2 levels." The appellant contended that to increase his sentence for weapons possession, he must be charged and convicted under 18 U.S.C. § 924(c)(1). Section 924(c)(1) provides: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking be sentenced to imprisonment for five years." He further contended that his due process rights were violated because he did not know his co-conspirator possessed a firearm and because he was not given notice of the firearm enhancement in the indictment nor was he accorded a jury trial on that issue. The court disagreed. It stated, "Although both the separate sentence under § 924(c) and the sentence enhancement under U.S.S.G. § 2D1.1(b)(1) result in an increased penalty, only a conviction and sentence under § 924(c) requires the full panoply of constitutional safeguards ordinarily granted

criminal defendants." 924 F.2d at 211. It reasoned that because the Guidelines did not alter the maximum sentence for the offense for which the appellant was convicted but merely limited the sentencing court's discretion in selecting a penalty within the permissible range, the government was entitled to treat the firearm possession as a sentencing consideration rather than as an element of a particular offense. 924 F.2d at 211 (citing *McMillan* ).

Essentially Mobley focuses on the similarity between U.S.S.G. § 2K2.1(b)(2) and 18 U.S.C. §§ 922(i), 922(j), contending that he received the same penalty with the application of the enhancement that he would have received had he been charged, convicted, and sentenced for violating § 922(i) or § 922(j). But this observation says nothing about whether his due process was violated. All it means is that under certain circumstance Congress and the Commission have set the same penalties. This is not the situation of a tail wagging the dog; but rather, of two dogs having tails of equal length. This distinction may be academic to the defendant who must serve the sentence, but it is analytically crucial for the due process scrutiny, for only if the prosecution charged Mobley with violating § 922(i) or § 922(j) must it prove that he knew the gun was stolen. *See Rodriguez-Gonzalez*, 899 F.2d at 181. The prosecution, however, did not charge Mobley under § 922(i) or § 922(j), but instead opted to charge him under § 922(g). At sentencing the district court enhanced his sentence *for violating § 922(g)*.

Mobley seeks to blur the distinction among a sentence, sentence enhancement, and definition of an offense. If he was correct, anytime specific offense characteristics of a sentence enhancement satisfy some element of a separate offense, many applications of the Guidelines would be constitutionally in doubt. For example, pursuant to U.S.S.G. § 1B1.3(a), courts must generally consider all "all acts and omissions" that compose "relevant conduct." These acts or omissions could in many cases satisfy elements of other offenses

and constitute grounds for more charges.[2] Moreover, courts have used the conduct underlying an offense in which defendant was acquitted to enhance a sentence.[3] Yet, courts have found these practices constitutional and have rejected subjecting these considerations to the reasonable doubt standard applicable to the offenses.[4] Thus we see no reason why we should treat, as Mobley would have, § 2K2.1(b)(2) as a separate offense and sentence, rather than the sentence enhancement that it is, simply because its conduct satisfies elements of 18 U.S.C. § 922(i) or § 922(j). *See McMillan,* 106 S.Ct. at 2415 (legislature's definition of the elements of the crime and sentencing factors are "usually dispositive").

By this conclusion we do not suggest that Congress or the Commission have free reign to fashion sentences and offenses so as to circumvent the Due Process Clause. The *McMillan* Court clearly envisioned limits. 106 S.Ct. at 2416 ("in certain limited circumstances *Winship*'s reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged"). *See United States v. Kikumura,* 918 F.2d 1084, 1119–21 (3d Cir.1990) (Rosenn, J., concurring). But the Court refused to set forth a "bright line" test, opting instead to simply say that the constitutionality of statutes will "depend on differences of degree." 106 S.Ct. at 2419. While not defining a bright line test, the

Court gave one example: *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

In *Specht* a Colorado statute exposed a defendant convicted of a sexual offense otherwise carrying a maximum penalty of ten years to an indefinite term to and including life imprisonment if the sentencing court made a post-conviction finding that the defendant posed "a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." 87 S.Ct. at 1211. The Court held that this statute violated due process.

Recently, in *Kikumura* we had occasion to consider *McMillan* while reviewing an upward departure from the Guidelines. In *Kikumura* the district court departed upward over one thousand percent from the Guidelines sentence range. We said *Kikumura* "is perhaps the most dramatic example imaginable of a sentencing hearing that functions as 'a tail which wags the dog of the substantive offense.'" 918 F.2d at 1101. The departure prompted Judge Rosenn in concurrence to write: "[B]ecause of the *extreme* departure involved here for the separate offense of attempted murder, it seems evident that the Government and the sentencing judge did not consider Kikumura's attempt to kill as collateral but *primary.*" 918 F.2d at 1120 (emphasis added and in original). *Accord Restrepo,*

**2.** *See United States v. Blanco,* 888 F.2d 907 (1st Cir.1989) (considering quantities of uncharged drugs); *United States v. Guerrero,* 863 F.2d 245 (2d Cir.1988) (same); *United States v. Williams,* 917 F.2d 112 (3d Cir.1990) (same); *United States v. Williams,* 880 F.2d 804 (4th Cir.1989) (same); *United States v. Taplette,* 872 F.2d 101 (5th Cir. 1989) (same); *United States v. Ykema,* 887 F.2d 697 (6th Cir.1989) (same); *United States v. White,* 888 F.2d 490 (7th Cir.1989) (same); *United States v. Payne,* 940 F.2d 286, 293 (8th Cir. 1991) (same); *United States v. Restrepo,* 903 F.2d 648 (9th Cir.1990) (same) (reversing 883 F.2d 781 (1989)), *modified* 946 F.2d 654 (1991); *United States v. Frederick,* 897 F.2d 490 (10th Cir.1990) (same); *United States v. Bennett,* 928 F.2d 1548 (11th Cir.1991) (same).

*See also United States v. Cianscewski,* 894 F.2d 74 (3d Cir.1990) (considering stolen checks sold by defendant's wife for which she was acquitted and he was not charged); *United States v. Scroggins,* 880 F.2d 1204 (11th Cir.1989) (considering defendant's 18 postal thefts to which defendant

did not plead guilty and for which government agreed to drop charges); *United States v. Frierson,* 945 F.2d 650 (3d Cir.1991) (considering defendant's gun possession though defendant only pleaded guilty to unarmed bank robbery with the government dismissing the armed bank robbery count).

**3.** *See United States v. Ryan,* 866 F.2d 604, 609 (3d Cir.1989); *United States v. Isom,* 886 F.2d 736, 738 & n. 2 (4th Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir.1989) (per curiam); *Mocciola,* 891 F.2d at 17; *Rodriguez–Gonzalez,* 899 F.2d at 181; *United States v. Rivera–Lopez,* 928 F.2d 372, 373 (11th Cir.1991) (per curiam).

**4.** *See, e.g., United States v. Fox,* 889 F.2d 357, 363 (1st Cir.1989); *United States v. Reynolds,* 900 F.2d 1000, 1003–04 (7th Cir.1990); *Payne,* 940 F.2d at 286; *Restrepo,* 903 F.2d at 653; *United States v. Frederick,* 897 F.2d 490, 492–93 (10th Cir.1990); *Bennett,* 928 F.2d at 1558.

946 F.2d at 660 (due process is violated when enhancement leads to "extremely disproportionate effects" or "drastically affect the length of the sentence"). Because of the ten-fold departure, we held that the clear and convincing evidence standard should apply to sentencing considerations when justifying an extreme departure. 918 F.2d at 1102.

Here the district court determined the Guideline range to be 21 to 27 months. It then sentenced Mobley to 27 months. Had the enhancement not been applied the range would have been 15 to 21 months. Assuming that the district court would have again applied the maximum sentence in the range, we note that the enhancement increased Mobley's sentence by only 6 months.

In *Specht* the sentencing enhancement could have increased a sentence from ten years to life imprisonment, and in *Kikumura* the upward departure increased a sentence of about 30 months to 30 years. A six month increase is hardly the stuff of due process violation that the *McMillan* Court had in mind in its canine metaphor. The guideline here does not disproportionately affect the sentence relative to the offense so that its specific offense characteristics constitute the primary conduct for which Mobley is being punished. *See McMillan*, 106 S.Ct. at 2417.

The Court of Appeals for the Fifth Circuit is the only other court of appeals to have considered the precise issue before us. *See Singleton*, 946 F.2d at 26–27. It rejected a due process challenge to U.S.S.G. § 2K2.1(b)(1).[5] It concluded, as we do, that the Constitution permits increased sentences for defendants who possess stolen guns regardless of whether they knew the gun was stolen. It held that there was no due process violation, reasoning that § 2K2.1(b)(1) does not create a crime where one otherwise would not exist. Rather it is a sentencing factor courts properly considered before the Guidelines and that courts now apply under the Guidelines. We see no sound reason why we should not follow this reasoning here.

## IV.

In sum, we hold that U.S.S.G. § 2K2.1(b)(2) does not have an implied scienter element. We further hold that the enhancement does not violate the Due Process Clause of the Fifth Amendment. We will affirm the judgment of sentence.

MANSMANN, Circuit Judge, dissenting.

I respectfully dissent. I believe that two significant factors—which the majority has left unmentioned—implicate Mobley's right to both substantive and procedural due process. As these two factors clearly demonstrate, the enhancement of Mobley's sentence under guideline § 2K2.1(b)(2) operated to relieve the government both from proving criminal intent and also from meeting a sufficient burden of proof. Because I do not believe that a sentencing enhancement under the Guidelines may be substituted for a criminal conviction consistent with substantive due process, or alternatively, that the preponderance standard here satisfies procedural due process, I would reverse and remand.

It is undisputed that the government elected not to charge Mobley with receiving or transporting a stolen firearm in violation of 18 U.S.C. §§ 922(i) or (j) ("stolen firearms charges").[1] Whereas the criminal

---

**5.** The court decided the constitutionality of old § 2K2.1(b)(1), which has been amended and renumbered as § 2K2.1(b)(2). The only difference between the two is the level of enhancement.

**1.** In footnote 2 to his appellate brief, Mobley states that the government had not anticipated seeking a Sentencing Guidelines enhancement under § 2K2.1(b)(2) prior to the probation officer's recommendation in the Pre–Sentence Report. At appellate oral argument, the Assistant United States Attorney also stated that the

government did not hold back a stolen firearms charge from the indictment in anticipation of seeking an equivalent sentence under the guideline enhancement. Nevertheless, whether this strategy was deliberately devised prior to the indictment, or later embraced, the government did request that the district court apply the enhancement and has defended the district court's sentence in this appeal. Moreover, the Assistant United States Attorney conceded during appellate oral argument that the government did not charge Mobley with a stolen fire-

complaint had contemplated both a charge under 18 U.S.C. § 922(g) (the "possession charge"), to which Mobley later pled guilty, and a stolen firearm charge, the government omitted a stolen firearm charge from the indictment. Each of the applicable stolen firearms charges require the government to prove that the defendant "[knew] or [had] reasonable cause to believe that the firearm ... was stolen." [2] The combination of either one of these stolen firearms charges with Mobley's possession charge would have mandated the same Sentencing Guideline range that Mobley received as a result of the guideline § 2K2.1(b)(2) enhancement.[3]

Nevertheless, having convicted Mobley of only a possession charge, during sentencing the government sought a two-level enhancement under guideline § 2K2.1(b)(2) because the firearm was stolen. In my view this choice to proceed under the Guidelines rather than pursuant to a criminal statute poses due process implications when, as here, the application of the guideline enhancement resulted in a guideline sentence range equivalent to the one Mobley would have been subject to had he been convicted of a stolen firearm crime plus the possession charge. Because the government conceded that it could not have proven the scienter element of either of the stolen firearms crimes and instead substituted the use of a sentencing guideline to obtain the same sentence, Mobley's substantive due process guarantee is implicated.[4] The government obtained the same

---

arms crime in the indictment because "I don't believe we could prove beyond a reasonable doubt that he knew the gun was stolen." There is ample information to show that the government circumvented difficulties with proof by choosing to pursue an equivalent Sentencing Guideline range pursuant to the § 2K2.1(b)(2) enhancement.

**2.** 18 U.S.C.A. § 922 provides, in pertinent part:
  (i) It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, *knowing or having reasonable cause to believe that the firearm or ammunition was stolen.*
  (j) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, interstate or foreign commerce, *knowing or having reasonable cause to believe that the firearm or ammunition was stolen.* (West 1976) (emphasis added).

**3.** At appellate oral argument, Mobley's counsel represented that Mobley received the same guideline sentencing range that he would have had he been convicted of a stolen firearms charge in addition to the possession charge. As the government has not challenged the accuracy of that factual assertion, I accept it as true. As well, I note that an additional conviction for Mobley under either 18 U.S.C. §§ 922(i) or (j) would have triggered the application of guideline § 2K2.1, see the cross-reference to § 2K2.1 in § 2K2.2(c) that is invoked when the former would yield a greater offense level, rendering an offense level of 12 after a two level enhancement because the firearm was stolen and a two level reduction for acceptance of responsibility.

**4.** Similar due process concerns have arisen in a number of cases. *See, e.g., United States v. Restrepo*, 946 F.2d 654, 664 (9th Cir.1991) (*en banc*) (Norris, J., dissenting); *United States v. Hill*, 943 F.2d 873, 876 (8th Cir.1991) (Heaney, J., concurring and dissenting) (increasing the guideline range on the basis of uncharged conduct known to the government before the indictment violates due process); *United States v. Miller*, 910 F.2d 1321, 1329 (6th Cir.1990) (Merritt, J., dissenting) ("The problem before us arises from the need to interpret the Sentencing Guidelines regarding relevant uncharged conduct and the aggregation of uncharged offenses in light of the superior legal principles of the enabling legislation authorizing the Guidelines and the constitutional provisions regarding notice, self-incrimination, confrontation, waiver and due process"), *cert. denied* — U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991); *United States v. Payne*, 940 F.2d 286, 293 (8th Cir.) (Heaney, J., concurring and dissenting), *cert. denied sub. nom. Bogan v. United States*, — U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) (challenging a guideline enhancement based on amounts of crack cocaine involved that were neither charged in the indictment nor proven at trial). As Chief Judge Merritt has forcefully argued, this practice should not be permitted because it gives the prosecution the opportunity "to indict for less serious offenses which are easy to prove and then expand them in the probation office." *Miller*, 910 F.2d at 1332 (Merritt, C.J., dissenting). Although the defendants in *Payne* were charged with conspiracy to distribute powder cocaine, which carries a significantly less harsh penalty than a conviction for crack cocaine, "the government's failure to charge crack meant that the defendants did not have notice of the charges and likely penalties against them." Moreover, the government benefitted from the relaxed evidentiary safeguards

term of imprisonment by seeking a guideline enhancement in lieu of a formal charge and conviction.

This strategy also obviated the government's need to meet the higher evidentiary and proof standards applicable prior to conviction. Procedural due process is implicated by this application of guideline § 2K2.1(b)(2), where the government may seek the same penalty afforded by a conviction through the lesser due process protections afforded during sentencing proceedings. As this case so plainly demonstrates, in certain situations the Guidelines provide the government a convenient detour around fundamental constitutional protections afforded an accused before conviction such that the government may seek the same punishment unfettered by the constraints of producing admissible evidence and proving its case beyond a reasonable doubt.

### I.

### A.

I would hold that, as applied in this case, guideline § 2K2.1(b)(2) violates Mobley's guarantee of substantive due process. The government admitted that it did not seek a conviction for a stolen firearm offense because it lacked sufficient evidence to prove that Mobley committed the crime of "Knowing or having reasonable cause to believe that the firearm was stolen." 18 U.S.C. §§ 922(i) & (j). Yet application of guideline § 2K2.1(b)(2) yielded the same sentence as a second conviction would have and obviated the need for proof of scienter.

The mechanical formulation of a sentencing guideline range within which a district court must sentence a defendant—absent grounds for departure—creates a liberty interest in a particular sentencing guideline range. In contrast to the pre-Guidelines

system, which permitted sentencing judges to employ their discretion when assigning penal consequences to sentencing facts subject only to statutory limitations, now, upon proof of specified sentencing facts, the Guidelines calibrate an inflexible and definite sentencing range. *See Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991) ("The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds [limited circumstances warranting departure]"). Specifically, here, upon the finding that the gun was stolen, guideline § 2K2.1(b)(2) prescribes a two level enhancement, which raised Mobley's guideline range from 15–21 months to 21–27 months. Under the Guidelines, "judicial factfinding is substituted for judicial discretion as the currency of the new sentencing regime" and therefore creates a "liberty interest in a sentence within the relevant Guidelines range." *United States v. Restrepo,* 946 F.2d 654, 665 (9th Cir.1991) (*en banc*) (Norris, J., dissenting).[5]

The mechanical effect of the Guidelines, which leaves no discretion for the district court, triggers one of the factors that implicates substantive due process according to the teaching of *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *McMillan* explained one feature that redeemed the Pennsylvania Mandatory Minimum Sentencing Act from due process infirmity: the fact that the Act increased only the minimum sentence and "neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty...." 477 U.S. at 88–89. Such is not the case where the Sentencing Guidelines range, rather than the statutorily prescribed sentence, controls and the application of a guideline enhancement increases that guideline range.

and the lower burden of proof available to it at the sentencing proceeding. "I do not believe the existence of crack to be merely a 'sentencing fact' when such a factual finding can mandate a doubling or tripling of a defendant's sentence." The uncharged conduct then becomes "the tail that wags the dog of the substantive offense." *Payne,* 940 F.2d at 295.

5. Many commentators have remarked that the inflexible method of calculating sentence ranges under the Guidelines has effected a shift from judicial to prosecutorial discretion. For a compelling explication of this shift, see, e.g., *United States v. Harrington,* 947 F.2d 956 (D.C.Cir.1991) (Edwards, J., concurring).

The majority finds that a defendant possesses a liberty interest in a sentence within the statutory range and analogizes this case to *McMillan*. But this case differs from *McMillan*, where the sentencing factor did not operate to increase the defendants' maximum sentence. Lacking reasons for departure, the district court was constrained to sentence Mobley within his sentencing guideline range, rather than the statutory range. *McMillan*, however, specified as one of the reasons for upholding the constitutionality of the sentencing factor that it only raised the minimum and not the maximum statutory sentence.

It is important to note that had the district court sentenced Mobley to a term of 21 months imprisonment—the minimum sentence afforded after the guideline enhancement and the maximum before the enhancement—Mobley would simply have received the maximum sentence permissible for his offense of conviction. This result would not have implicated a due process concern because Mobley has no post-conviction constitutional right to a particular sentence within the Guideline range. Criminal defendants do, however, have a liberty interest in their sentencing guideline range itself. *See Burns*, —— U.S. ——, 111 S.Ct. at 2192 (Souter, J., dissenting); *cf. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (no liberty interest in early release date *prior to* expiration of sentence). Thus because the district court imposed a sentence of 27 months, the maximum sentence available after the two level enhancement of guideline § 2K2.1(b)(2), Mobley's circumstance squarely presents a liberty interest.

### B.

The majority reasons that guideline § 2K2.1(b)(2) rationally furthers the purposes of the 1968 Gun Control Act, positing that "[the Act] is part of a comprehensive scheme to regulate the movement of firearms," Majority at 453, and guideline § 2K2.1(b)(2) "advances the overall regulatory scheme" because it "regulates" transactions in stolen firearms, which are more likely to be used in criminal activity. Majority at 454. While I agree with the majority's assertion that the guideline enhancement at issue here was promulgated to address regulatory concerns, Majority at 453–54; *see, e.g.,* U.S.S.G. § 2K2.1, comment. (backg'd.) ("[i]ndependent studies show that stolen firearms are used disproportionately in the commission of crimes"), I do not find guideline § 2K2.1(b)(2), insofar as it purports to be a strict liability enhancement, to be rationally related to a legislative purpose because the Gun Control Act evidences another explicit legislative purpose. As the government admits, to convict Mobley for a stolen firearm charge, it would have had to prove that Mobley "[knew] or [had] reasonable cause to believe that the firearm ... was stolen." 18 U.S.C. § 922(i) or (j).

The majority cites a regulatory purpose underlying guideline § 2K2.1(b)(2) to support its conclusion that that purpose defeats the need for implying a scienter element into guideline § 2K2.1(b)(2). In the context of a statutory construction analysis, I am cognizant that although "[t]he existence of *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence," *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951), the presumption against strict liability for criminal sanctions attaches chiefly to those offenses derived from the common law as distinguished from regulatory offenses, and the legislature may create an offense without requiring scienter in any form. *See Morissette v. United States*, 342 U.S. 246, 259, 72 S.Ct. 240, 247, 96 L.Ed. 288 (1952). In this regard, courts look to "the peculiar nature and quality of the offense." *Id.* The Supreme Court has "referred to '... a now familiar type of legislation whereby penalties serve as effective means of regulation,' and continued, 'such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.'" *Id.* at 259–60, 72 S.Ct. at

247–48 (quoting *United States v. Dotter-weich*, 320 U.S. 277, 280–81, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943)). As we have noted,

> [T]hough the result may appear harsh, it is well established that criminal penalties attached to regulatory statutes intended to protect public health, in contrast to statutes based on common law crimes, are to be construed to effectuate the regulatory purpose.

*United States v. Johnson & Towers, Inc.*, 741 F.2d 662, 665 (3d Cir.1984), *cert. denied, Angel v. United States*, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985); *see United States v. Green Drugs*, 905 F.2d 694, 696 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 518, 112 L.Ed.2d 530 (1990) (noting the distinction between the "advancement of some social purpose rather than the punishment of the crime").

I depart from the majority, however, because it has mismatched portions of the Gun Control Act with guideline § 2K2.1(b)(2). The pertinent match is highlighted by the government's choice; thus we should evaluate Mobley's constitutional claim against the conflict between the scienter element of the stolen firearms crimes and the lack of a scienter element in a stolen firearm guideline enhancement of § 2K2.1(b)(2), where both yield the same penalty.

I begin with the observation that in the Sentencing Reform Act of 1984, Congress delegated the task of developing a real offense sentencing scheme to the Sentencing Commission. This delegation survived a separation of powers challenge in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), where the Supreme Court determined that Congress had properly delegated authority to the United States Sentencing Commission to create sentencing standards, reasoning that in the Sentencing Reform Act of 1984, Congress had set forth more than merely "intelligible principle[s]" or minimal standards required to delegate exactly "the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *Id.* at 379, 109 S.Ct. at 658. The Court found that, as a whole, the

Sentencing Guidelines were promulgated with the proper legislative authority. *Id., see also United States v. Frank*, 864 F.2d 992 (3d Cir.1988) (sentencing scheme which emphasizes generally acceptable retributive and deterrent purposes is not so fundamentally unfair as to warrant due process condemnation), *cert. denied*, 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *United States v. Brady*, 895 F.2d 538 (9th Cir.1990) (the Sentencing Guidelines do not infringe an individual's right to due process in sentencing; the legislature is empowered to determine both the factors and the weighing of them for sentencing purposes). Further, the Sentencing Guidelines must conform to the direction contained in its enabling legislation. *United States v. Nottingham*, 898 F.2d 390, 393 (3d Cir.1990). And to the extent that the enabling legislation contains specific direction, the Sentencing Guidelines must comport with that direction. *Id.* at 393.

The fact that congressional delegation of general authority to the Sentencing Commission is constitutionally permissible does not foreclose a consideration of whether a particular guideline transgresses substantive due process in a larger context. The difficulty presented by this case consists in inconsistent legislative statements. On the one hand, the Sentencing Commission was charged, generally, with creating Guidelines based upon real offense, rather than only charged offense, conduct, 18 U.S.C. § 3553(a)(1); on the other hand, Congress has specifically required proof of scienter as an element of the stolen firearm crimes. I believe that this latter, and more specific, congressional requirement should control the substantive due process inquiry. Thus I would not reject Mobley's due process challenge upon a finding that the guideline enhancement is rationally related to the legislative intent expressed in the enabling act given the more specific contradictory intent in the stolen firearms crimes. Where, as here, Congress has spoken more directly to an issue, we should hesitate to invoke general legislative statements in support of a guideline that so clearly controverts a more explicit legislative intention. *Id.* at 393.

As the government's choice in this case demonstrates, Congress has failed to give specific direction. Instead, Congress authorized enhancements based on real offense conduct in the Guidelines' enabling legislation, but also required that in order for criminal consequences to attach to a stolen firearms crime, criminal intent must be proved. 18 U.S.C. § 922(i) and (j). Where Congress has spoken with more than one voice on the question of whether scienter is required for criminal consequences to attach to the possession of a stolen firearm, deleting that proof requirement when enhancing a sentencing guideline range does not comport with Congress' direction. *See Restrepo*, 946 F.2d at 673 (Norris J., dissenting) ("the majority attributed to a silent Congress the intent to take the internally contradictory stand that the finding of a drug sale is both an element of a crime that must be proved beyond a reasonable doubt and a sentencing fact that may be proved by a mere preponderance").

### C.

In *McMillan,* the Court delineated factors that would implicate due process limitations, although in upholding the Pennsylvania Mandatory Minimum Sentencing Act, it found that the Act did not necessitate a "precise defin[ition of] the constitutional limits." 477 U.S. at 86, 106 S.Ct. at 2416. The Court explained that the sentencing factor at issue in *McMillan*—visible possession of a firearm during the commission of the underlying felony—had traditionally been a sentencing consideration and had never been an element of any

of the underlying felonies. Recognizing the possibility that the due process principle of *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), would be compromised if a legislature could reclassify as merely a sentencing factor a fact that traditionally comprised an element of a crime, *McMillan* explained:

> The specter raised by petitioners of States restructuring existing crimes in order to "evade" the commands of *Winship* just does not appear in this case. As noted above, § 9712's enumerated felonies retain the same elements they had before the Mandatory Minimum Sentencing Act was passed. The Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an "element" of some hypothetical "offense."

477 U.S. at 89–90, 106 S.Ct. at 2418 (footnote omitted). Mobley's indictment and sentence do indeed present the "specter" of "restructuring" crimes into sentencing factors, as demonstrated by the government's choice to either charge Mobley with a violation of either 18 U.S.C. §§ 922(i) or (j) or to pursue an equivalent guideline sentencing range by invoking the guideline § 2K2.1(b)(2) enhancement, which was not subject to a scienter requirement.[6] Con-

---

6. Because this case implicates "restructuring" to delete a scienter requirement, it differs from *United States v. Martinez,* 924 F.2d 209 (11th Cir.1991), cited by the majority. Majority Typescript at 457. There the district court made an explicit factual finding of scienter, prompting the court of appeals to explain: "Appellants' protestations that they were in fact unaware of the firearm possession do not upset the district court's finding that the possession of the firearm was reasonably foreseeable." *Id.* at 210. Mobley contends precisely the opposite, specifically, that his substantive due process was violated because the district court made no finding of scienter pursuant to the guideline enhancement.

Likewise, the cases concerning drug offenses, cited in footnote 2 of the majority opinion, involved enhancements for quantities of drugs and do not diminish Mobley's substantive due process claim. The use of additional uncharged quantities of drugs as a guideline range enhancement does not threaten to punish a defendant without a finding of criminal intent. By analogy, had Mobley's sentence been enhanced because he possessed more than one firearm in violation of section 922(g), no due process issue would be implicated. Our decision in *Cianscewski,* 894 F.2d at 74, upholding a sentence enhancement based upon a co-defendant's conduct, similarly did not involve an issue of scien-

gress has not remained silent on the scienter requirement and delegated all of its authority to the Sentencing Commission; rather, Congress has explicitly made scienter a requirement in substantive offenses under which the government declined to prosecute Mobley. Thus Congress has not indicated that the offense of possession of a stolen gun is a mere regulatory one for which scienter is not a required element.

Where Congress has chosen to require scienter for proof of a crime, I am not persuaded that Congress' designee, the Sentencing Commission, may transform that same conduct, minus scienter, into a sentencing factor, which when applied yields an equivalent sentence range as would an additional conviction. Further, I am not persuaded that the broad delegation of authority for creating the Sentencing Guidelines reaches so far nor that the regulatory exception to the presumption against strict liability in a statutory construction context permits this result, which is inconsistent with due process. The absence of a singular expression of congressional intent, combined with the manifest conflict between the scienter required in the stolen firearms crimes versus guideline § 2K2.1(b)(2), underscores the lack of congressional guidance with which we proceed and demands caution in depriving Mobley of his liberty interest.

Therefore, I would hold that where, as here, the government seeks a sentence enhancement under guideline § 2K2.1(b)(2) in lieu of bringing a formal charge for possession of a stolen firearm, the government must prove scienter. This construction of guideline § 2K2.1(b)(2), as applied to these facts, avoids an "unnecessary due process problem." *United States v. Perry,* 788 F.2d 100, 115 (3d Cir.), *cert. denied,* 479

U.S. 864, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986); *see, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("[w]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress").

## II.

Mobley poses an additional procedural due process issue that presents an alternative ground for reversal. The procedural due process issue is also crystallized by the fact that the application of the guideline enhancement resulted in a sentence equal to that which Mobley would have received had he been convicted of two offenses. This is so even if an implicit scienter element is incorporated into guideline § 2K2.1(b)(2). Identical elements of proof would not equalize the procedural disparity between pre- and post-conviction proceedings. That is, Mobley's interest in post-conviction procedural due process is heightened because the penalty imposed upon post-conviction factfinding equals the penalty that would have attached pursuant to an additional offense of conviction. The disparity in the burden of proof afforded a defendant before and after conviction points out the need for a higher post-conviction standard of proof under this guideline as applied.

Nothing in the Guidelines themselves requires a preponderance of the evidence standard for sentencing factfinding. In fact, the Sentencing Commission has emphasized that under the Guidelines, sentencing hearings would be imbued with

---

ter because the defendant had been convicted of conspiracy, and much like the drug offenses cases, his guideline range was enhanced for additional quantities of offenses committed during the course of the conspiracy. More specifically, that the co-defendant was acquitted *based upon an entrapment defense,* "in no way precluded the district court from finding that [*the defendant*] was so predisposed, and therefore not excused from otherwise criminal activity." *Id.* at 81 (emphasis in original). Moreover, the

district court determined the guideline range in *Frierson,* 945 F.2d at 650, after holding an evidentiary hearing and finding "that Frierson had possessed a weapon during the commission of the robbery ..." *Id.* at 653. While *Frierson* does not fully support my position, neither does it fully support the majority's because there the district court made particular fact findings in contrast to the general opinion voiced during Mobley's sentencing hearing.

more formality than under the old system, precisely because of the mandatory consequences of the factfinding. U.S. Sentencing Comm'n, Guidelines Manual § 6A1.3, p.s., comment. (1990). The Commission has expressly left to the courts the task of determining appropriate standards of proof under the Guidelines System.

Under the pre-Guidelines sentencing system, by contrast to the current system, the district court could mete out a sentence within the statutory range by weighing sentencing factors as he or she saw fit. A defendant possessed a constitutional liberty interest only in a sentence within that statutory range. Yet under the Guidelines, the statutory limits no longer control, the district court must sentence a defendant within the Guideline range absent extraordinary reasons for departure. Sentencing factors thus weigh significantly more heavily because they alter the Guideline range, in which the Guidelines have created a constitutional liberty interest. In *McMillan,* the Court explained that the Pennsylvania Act did not implicate a liberty interest because it increased only the minimum sentence upon the finding of a sentencing fact, leaving the maximum penalty unchanged. *McMillan,* 477 U.S. at 87, 88, 106 S.Ct. at 2417. The liberty interests of the defendants in *McMillan,* whose sentences could not exceed the statutory maximum, were not triggered. By contrast, Mobley's liberty interest in a sentence within his guideline range is triggered because the Guideline § 2K2.1(b)(2) enhancement increased both the minimum and the maximum of the guideline range.

*McMillan* makes untenable the reasoning in *United States v. Singleton,* 946 F.2d 23 (5th Cir.1991), upon which the majority relies, *see* Majority at 457, because the court failed to recognize the distinction between the pre- and post-Guidelines sentencing systems. There, discussing identical "stolen gun" language in guideline § 2K2.1(b)(1), the Court of Appeals for the Fifth Circuit stated: "The decision ... to consider this factor before the guidelines took effect was not unconstitutional, and the Commission's decision to continue consideration of this factor today does not change the result."

Our pre-Guidelines decision of *United States v. Davis,* 710 F.2d 104, 105–07 (3d Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983), in which we held that a dangerous special offender sentencing enhancement subject to a preponderance standard did not violate due process, also differs from the Guidelines because its application did not result in the meting out of a determinate sentence. The statutory enhancement at issue in *Davis* provided that upon the prerequisite factfinding, the district court shall sentence the defendant *"for an appropriate term* not to exceed twenty-five years *and not disproportionate in severity* to the maximum term otherwise authorized by law for the [underlying] felony." *Davis,* 710 F.2d at 105 (emphasis added). The enhancement itself left discretion in the hands of the sentencing judge.

We have previously attached significance to the due process implications of these distinctions between the old and new sentencing systems. As we discussed at length in *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990):

> Though long recognized as a practical necessity, real offense sentencing can create the potential for significant unfairness. This is so because every factual consideration deemed relevant for sentencing purposes must be established through a collateral, post-verdict adjudication at which the applicable procedural protections are significantly lower than those applicable at the trial itself. For example, a criminal defendant enjoys the right to a trial by jury, *see* U.S. Const. amend. VI, but that right does not exist at sentencing, *see, e.g., Spaziano v. Florida,* 468 U.S. 447, 459, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984). At trial, an element of a charged offense must be proven beyond a reasonable doubt, *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), but most pertinent sentencing facts need only be established by a preponderance of evidence, *see McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418,

91 L.Ed.2d 67 (1986) (holding that the preponderance standard is generally constitutional); *United States v. McDowell*, 888 F.2d 285, 290–91 (3d Cir.1989) (holding that the preponderance standard is generally appropriate in guidelines sentencing). At trial, a jury may consider evidence only if it is admissible under the Federal Rules of Evidence, and the confrontation clause bars consideration of all admissible hearsay unsupported by either "a firmly rooted hearsay exception" or other "particularized guarantees of trustworthiness," *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). At sentencing, by contrast, the Federal Rules of Evidence are inapplicable, *see* Fed.R.Evid. 110(d)(3); *Williams v. New York*, 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949) (endorsing the use of hearsay evidence at sentencing), and hearsay normally may be considered subject only to the modest due process requirement that it bear "some minimal indicium of reliability beyond mere allegation," *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir.1982); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider the purpose of imposing an appropriate sentence."); *United States v. Sciarrino*, 884 F.2d 95, 97 (3d Cir.) (holding that the reliability analysis is not heightened by the shift from an unstructured sentencing regime to a more determinate guidelines system), *cert. denied*, 493 U.S. 997, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989).

918 F.2d at 1099–1100. Following *McMillan*'s instruction, we held in *Kikumura* that where a departure from the guideline range is so great as to constitute "the tail which wags the dog of the substantive offense," we would require that the facts underlying the departure be proved at least by clear and convincing evidence. *Id.* at 1101. Similar due process concerns require that a clear and convincing standard should apply in cases such as Mobley's where the application of a sentencing guideline will automatically yield a sentence equivalent to a sentence that would have been imposed had the defendant been convicted of a crime proscribing the same offense-related conduct. The balancing test prescribed by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires no less.

In his dissent to *Restrepo*, Judge Norris eloquently explained the need for a burden of proof exceeding a preponderance standard and articulated why an increased standard of proof would be consistent with the underlying goals of the Sentencing Guidelines:

A preponderance burden of proof, which allocates the risk of error nearly evenly, *see Addington v. United States*, 441 U.S. [418] 423, [99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) ] allows a fact to be considered true if the factfinder is convinced that the fact is more true than not, or to put it differently, if the fact finder decides there is a 50%–plus chance that it is true. The standard thus creates a much greater risk of error, far more error than a standard that would assure a "higher degree of certainty" in sentencing factfinding. *The Supplementary Report, [on the Initial Sentencing Guidelines and Policy Statements* (1987) ], at 47 n. 79. The greater risk of error created by a preponderance standard disserves the Guidelines' goal of sentencing uniformity. No matter how accurate and statistically significant the Guidelines distinctions and sentencing ranges may be, they will not serve Congress' purpose unless defendants are assigned to the proper Guidelines range by accurate factfinding. As one commentator has said, "[I]n the war against [sentencing] disparity, the tacticians of the guidelines movement have paid insufficient attention to the procedures that develop the facts to which guidelines are applied.... Ironically, sentencing guidelines may entrench a different kind of disparity—factual disparity." Pope, [How Unreliable Factfinding Can Undermine Sentencing Guidelines, 95 Yale L.J. 1258 (1986) ], at 1260.

*Restrepo,* 946 F.2d at 677 (Norris, J., dissenting).

Within the inflexible confines of the Sentencing Guidelines system, the preponderance of the evidence standard here creates an undue risk of an erroneous deprivation of a criminal defendant's liberty. As I mentioned previously, we characterized the twelve-fold upward departure in *Kikumura* as "a tail which wags the dog of the substantive offense," opining that "[i]n this extreme context, we believe, a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations." 918 F.2d at 1101. I would adopt the same reasoning in cases where the government chooses to pursue an equivalent sentence by operation of the Guidelines, rather than seeking a formal conviction for the same conduct.

### III.

Because I believe that Mobley's due process rights are violated by the sentence here I respectfully dissent.