[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10013
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-00200-AT-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWAYNE FIELDS,
a.k.a. New York,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 30, 2015)

Before HULL, ROSENBAUM and FAY, Circuit Judges.

PER CURIAM:

Dwayne Fields appeals his 10-year imprisonment sentence for dealing firearms without a license. We affirm Fields's sentence but vacate and remand to correct a clerical error in the judgment.

## I.    BACKGROUND

A federal grand jury charged Fields and six others, Kenneth Porter, Khalif Jackson, Mosezell Kelly, Niqua Brown, Delvin Sloan, and Keilen Adrine, in an eleven-count superseding indictment. Fields was charged with dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) (Count 1); making false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Count 5); knowingly possessing and selling a stolen firearm, in violation of §§ 922(j) and 924(a)(2) (Count 6); and knowingly possessing a rifle with a barrel length of less than 16 inches that was not registered to him, in violation of 26 U.S.C. §§ 5841, 5845(a)(3), 5861(d), and 5871 (Count 7). Fields pled guilty to all counts without a plea agreement.

A.    Presentence Investigation Report

According to the presentence investigation report ("PSI"), beginning on October 1, 2011, the Bureau of Alcohol, Tobacco, Firearms, and Explosives and the Atlanta Police Department ("APD") operated an undercover warehouse in Atlanta, Georgia. From January 12 through June 26, 2012, Fields and his codefendants sold approximately 38 firearms and ammunition to an APD

2

undercover officer in some 30 separate transactions, some of which took place at the undercover warehouse.

On January 12, 2012, an undercover officer and a confidential informant met with Fields at the Old National Discount Mall in Atlanta and asked about purchasing a firearm. Outside of the mall, Fields sold the undercover officer a revolver loaded with five rounds of ammunition for $150.

On January 18, 2012, an undercover officer met with Fields and Antoine Smith, who drove the car in which the pair arrived at the warehouse. Smith carried a potato-chip bag, from which he removed three plastic bags containing approximately 259.9 grams of marijuana. Smith handed the bags of marijuana to the undercover officer; after weighing and inspecting the bags, the officer gave Smith $950. When the transaction was complete, Smith and Fields left the warehouse.

Also on January 18, Fields and codefendant Jackson met with two undercover officers at the warehouse. Fields carried a .410 caliber shotgun, and Jackson carried a Ruger .357 pistol. Fields sold both guns to the undercover officer. The Ruger .357 had an obliterated serial number. At the meeting, Fields told the officers he had no felony convictions, and he offered to straw purchase firearms for the undercover officers.

3

On February 13, 2012, Fields sold two shotguns to an undercover officer, one of which had been reported stolen. Fields brought the two guns to the warehouse and handed them to the officer. The officer asked Fields if the guns were stolen, and Fields stated he did not believe they were stolen. The officer told Fields that one of the shotguns did not have a serial number, and Fields responded, "Don't your people just resell them when they get to Cali?"

On February 16, 2012, Fields sold another firearm to the undercover officer, and he again offered to straw purchase firearms for the officer. The undercover officer told Fields to be ready to make a straw purchase the next day. Meanwhile, on February 15, 2012, undercover officers went to the Forest Park Army-Navy Store, Inc., in Forest Park, Georgia and met with an employee, M.T., who agreed to facilitate an undercover straw purchase. The officers selected an assault rifle and a pistol for the purchase.

On February 22, 2012, an undercover officer called Fields, and Fields stated he was willing to purchase the two guns that the officer had selected. On February 23, 2012, Fields and undercover officers went to the Forest Park Army-Navy Store. M.T. handed the pistol to an undercover officer and the rifle to Fields. M.T. told Fields to fill out ATF Form 4473 and advised Fields not to "fuck up" on the form, or he would not be approved. Fields read aloud question 11K from Form 4473, which asked, "Are you an alien illegally in the United States?" The undercover

4

officer stated Fields was not an illegal alien, but the undercover officer was.  M.T. walked Fields through the rest of Form 4473 and told him not to worry about question 12, which asked if a non-immigrant-alien purchaser fell within any exception set forth in the instructions.  The undercover officer then gave $1,153.46 cash to M.T. to complete the transaction for the two weapons.  Fields and the officer exited the store, with Fields carrying the pistol, and the officer carrying the rifle.  Fields was paid $250 for the straw purchase.

On June 1, 2012, Fields sold three firearms and ammunition to the undercover officer.  After that, the undercover officer asked Fields if he or anyone he knew had taken part in robberies.  Fields stated both he and other individuals he knew were involved in the robberies.  Fields said he would contact and bring to the officer individuals to discuss the robbery of a drug-stash house.  The officer advised that the stash house was guarded with armed security around the clock.

On June 4, 2012, Fields and codefendant Brown went to the warehouse together; Brown sold two firearms, one of which was stolen, to an undercover officer.  At that time, the officer asked Fields if he had talked to anyone about the planned drug-stash-house invasion.  Fields advised he had spoken to codefendant Brown and others.  Asked if they were still willing to pursue the planned robbery, both Brown and Fields answered affirmatively.  Brown asked the officer if the

individuals, who were supplied the drugs, were the same individuals to whom the officer had sold the firearms, and the officer responded affirmatively.

Fields also sold a Ruger .22 caliber rifle with a 12.5-inch barrel to an undercover officer. The barrel and overall length of the .22 caliber rifle qualified it as a National Firearms Act ("NFA") weapon requiring registration, although the rifle was not registered.

Of relevance to this appeal, Fields's PSI shows a four-level enhancement under U.S.S.G. § 2K2.1(b)(4), because one of the guns he sold on January 18, 2012, had an obliterated serial number. He also received a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for engaging in the trafficking of firearms because, according to a law enforcement agent, Fields believed that he was selling the firearms to a convicted felon, who was shipping them to California. He received an additional four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), because he used or possessed the firearm with knowledge or reason to believe that it would be used in connection with another felony offense, since he was present when Brown asked and was told the guns were being supplied to drug traffickers. Fields received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). His total offense level was 35. Fields had one criminal history point and was assigned a criminal history category of I.

Prior to the sentencing hearing, Fields objected to the four-level enhancements under § 2K2.1(b)(4) for an obliterated serial number and § 2K2.1(b)(6)(B) for transferring a firearm with the knowledge or belief that it would be used in connection with another felony. He also contended he was entitled to a two-level, minor-role reduction under U.S.S.G. § 3B1.2(b). At the sentencing hearing, Fields raised an additional objection to the four-level § 2K2.1(b)(5) enhancement for trafficking of firearms.

B.    Sentencing Proceedings

At Fields's sentencing hearing, Officer Stephen McKesey, the lead undercover officer in Fields's case, testified he posed as a member of the Crip gang, who had moved to Georgia from the Compton, California area. The first time he met Fields, Officer McKesey told Fields he was member of the Crip gang, had a felony record, and had moved to Georgia to obtain guns to sell to his fellow gang members in California. Fields told McKesey he would help him. McKesey further showed Fields FedEx boxes, indicating the guns were shipped to California and demonstrated how he disassembled the guns for shipping.

Fields testified during the hearing. After his direct and cross-examinations, the district judge asked Fields whether Officer McKesey had advised him the guns were being purchased on behalf of the Crips and sent to California. Fields responded during his third meeting with Officer McKesey that McKesey had stated

7

he was reselling the guns in California.  Fields, however, said he did not know the guns were for gang members.  On re-cross examination, Fields acknowledged, when he sold the guns to Officer McKesey, he believed McKesey was a convicted felon.

Regarding the § 2K2.1(b)(6) enhancement for possession of a firearm in connection with another felony, Fields argued his connection to the alleged felony, supplying guns to drug traffickers, was too tenuous to support the enhancement. Later in the sentencing hearing, the government declined to move for a one-level reduction for acceptance of responsibility under § 3E1.1(b), because Fields had violated the conditions of his pretrial release by failing to (1) report in person and via telephone, as required; (2) enroll in a General Education Development program; and (3) submit a monthly report.

The district judge overruled all of Fields's Sentencing Guidelines objections. Regarding the § 2K2.1(b)(4)(B) enhancement for an obliterated serial number, the judge determined, under the circumstances, Fields would not necessarily have known about the obliteration, but he could have looked to see whether the serial number had been obliterated.  The judge also overruled Fields's objections to the § 2K2.1(b)(5) enhancement for trafficking of firearms and the § 2K2.1(b)(6)(B) enhancement for possessing a firearm in connection with another felony.  The judge explained that, of those involved in the scheme, Fields had heard the most

8

and was in the greatest position to infer McKesey (1) planned to use the guns for unlawful purposes and (2) was not allowed to possess guns lawfully. The judge also emphasized Fields repeatedly had heard conversations that alerted him the guns potentially would be used for unlawful purposes, including drug trade. The judge also denied Fields's request for a two-level mitigating role reduction under § 3B1.2(b).

The judge applied a two-level reduction under § 3E1.1(a) for acceptance of responsibility. She explained the government was being "miserly" by refusing to move for the additional one-level § 3E1.1(b) reduction, but she determined she lacked authority to require the government to move for the reduction. R. at 2089. The judge then determined that Fields's offense level was 36, which, combined with his criminal history category of I, yielded a Sentencing Guidelines range of 188 to 235 months of imprisonment.

In arguing about the 18 U.S.C. § 3553(a) factors, Fields asserted a short sentence between 36 and 60 months of imprisonment would be sufficient to fulfill the sentencing goals, because he already had started the rehabilitation process, obtained treatment for his drug addiction, and received strong family support. The district judge determined a 5-year imprisonment sentence did not sufficiently reflect that Fields had made the conscious choice to engage repeatedly in illicit gun transactions and had involved his friends and acquaintances in the scheme.

9

Considering Fields's lack of a criminal history, however, the district judge determined the Guidelines range was too high and a sentence of 120 months of imprisonment was appropriate.

## II.    DISCUSSION

A.    Section 2K2.1(b)(4)(B) Enhancement for Possessing a Gun with an Obliterated Serial Number

On appeal, Fields argues the four-level enhancement of § 2K2.1(b)(4)(B) for possessing a gun with an obliterated serial number should not apply because he (1) possessed the firearm for minutes, if not seconds, before giving it to the undercover officer, and (2) he had no knowledge the firearm had an obliterated serial number. Relying on a district court decision, *United States v. Handy*, 570 F. Supp.2d 437 (E.D.N.Y. 2008), Fields argues § 2K2.1(b)(4)(B) should be deemed unconstitutional, since it allows a defendant's sentence to be increased for possessing a firearm with an obliterated serial number without requiring that the defendant know or have reason to know that fact.

In the context of the Sentencing Guidelines, we review purely legal questions de novo and a district judge's factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). The judge's application of the Guidelines to the facts in most cases is reviewed with due deference, which is tantamount to clear-error review. *Id.* "For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been

10

committed." *Id.* (quotation omitted). When interpreting the Sentencing Guidelines, we are bound by the Guidelines commentary. *United States v. Contreras*, 739 F.3d 592, 594 (11th Cir.), *cert. denied*, 134 S. Ct. 2858 (2014). "The commentary is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.*

A defendant receives a four-level increase if any firearm had an altered or obliterated serial number. U.S.S.G. § 2K2.1(b)(4)(B). Enhancements under § 2K2.1(b)(4) apply "regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number." *Id.*, cmt. n.8(B). With reference to the two-level enhancement under § 2K2.1(b)(4)(A) for possession of a stolen firearm, we have held "that the lack of a mens rea element in the sentencing enhancement for possession of a stolen firearm does not offend due process because § 2K2.1(b)(4) does not create a crime separate and apart from the underlying felony." *United States v. Richardson*, 8 F.3d 769, 770 (11th Cir. 1993).

The district judge properly applied the four-level, § 2K2.1(b)(4)(B) enhancement. Fields has not disputed that one of the guns he sold on January 18, 2012, had an obliterated serial number. Under the Guidelines commentary, there is

11

no requirement that he have any knowledge, or reason to believe, the firearm had an obliterated serial number. *See* U.S.S.G. § 2K2.1, cmt. n.8(B).

Fields's argument § 2K2.1(b)(4) is unconstitutional because it may be applied without a mens rea element, is unpersuasive. *Richardson* is controlling under these circumstances because the language and reasoning in *Richardson* covers § 2K2.1(b)(4)(B), as well as (b)(4)(A), because (1) application note 8(B) of the Guidelines, explaining that the enhancement applies regardless of a defendant's knowledge, concerns both § 2K2.1(b)(4)(B) and (b)(4)(A), and (2) § 2K2.1(b)(4) does not create a crime separate and apart from the underlying felony. *See Richardson*, 8 F.3d at 770.

In *Handy*, the Eastern District of New York court determined the § 2K2.1(b)(4)(A) enhancement could not be applied, when the defendant did not know or have reason to know the gun he possessed was stolen. *Handy*, 570 F. Supp.2d at 440, 480. Fields's reliance on *Handy* is unavailing, because that decision is not binding on this court, and it is contrary to *Richardson*, which is binding precedent. In view of the reasoning in *Richardson* and the limited applicability of *Handy*, the district judge did not err.

B.    Section § 2K2.1(b)(5) Enhancement for Trafficking in Firearms

Fields argues the § 2K2.1(b)(5), four-level enhancement for trafficking in firearms should not apply, when a defendant sells or transfers a firearm to only an

undercover police officer.  He contends the district judge improperly applied the enhancement in his case.

A defendant receives a four-level enhancement under the Sentencing Guidelines, if he "engaged in the trafficking of firearms . . . ."  U.S.S.G. § 2K2.1(b)(5).  This enhancement applies, in relevant part, if the defendant (1) transferred "two or more firearms to another individual," and (2) "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful; or . . . who intended to use or dispose of the firearm unlawfully."  *Id.*, cmt. n.13(A)(i)-(ii).

The Guidelines commentary does not support Fields's argument; therefore, the judge properly applied § 2K2.1(b)(5).  *See id.*, cmt. n.13(A); *Contreras*, 739 F.3d at 594 (recognizing the Guidelines commentary is authoritative).  The Guidelines commentary makes clear the enhancement applies, if the defendant "had reason to believe" his conduct would result in the transfer of firearms to someone whose possession would be unlawful.  *See* U.S.S.G. § 2K2.1, cmt. n. 13(A)(i)-(ii).  Fields admitted his belief that Officer McKesey, to whom he transferred the guns, was a convicted felon.  Consequently, he had reason to believe Officer McKesey was not allowed to possess the firearms lawfully.  *See* U.S.S.G. § 2K2.1, cmt. n.13(A)(i)-(ii).  According to Officer McKesey's testimony

at the sentencing hearing, McKesey told Fields of his intent to sell the guns to gang members in California, which also would justify the firearms trafficking enhancement. *See id.*, cmt. n.13(A)(ii). Because nothing in the Guidelines commentary suggests the defendant's belief must be true, Fields's focus on the fact he transferred firearms solely to an undercover officer is unpersuasive.

C.      Section § 2K2.1(b)(6)(B) Enhancement for Possession of a Firearm in Connection with Another Felony

Fields argues the district judge improperly applied the § 2K2.1(b)(6)(B) enhancement, because the government did not show any of the potential bases for the enhancement, such as the planned robbery and McKesey's marijuana purchase, were actual felonies. In support of his argument, Fields cites the general principle the government bears the burden of proving any fact that increases a defendant's Guidelines sentence.

If a defendant raises a sentencing issue for the first time on appeal, we review for plain error. *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011). To preserve a sentencing objection, the defendant must raise the "point in such clear and simple language that the trial court may not misunderstand it." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (quotations omitted). "The defendant . . . fails to preserve a legal issue for appeal if the factual predicates of an objection are included in the sentencing record, but were presented to the district court under a different legal theory." *Id.*

14

To prevail under the plain-error standard of review, a defendant must prove there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (quotations omitted). If a defendant proves all of these elements, we "may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

A defendant receives a four-level increase under the Sentencing Guidelines, if he "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The applicable commentary provides this enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.*, cmt. n.14(A). "Another felony offense," for purposes of § 2K2.1(b)(6)(B), "means any federal, state, or local offense, other than the . . . firearms possession

15

or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.*, cmt. n.14(C). Where a defendant challenges one of the factual bases of his sentence, the government must prove the disputed fact by a preponderance of the evidence with reliable and specific evidence. *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013).

We review Fields's objection to § 2K2.1(b)(6)(B) for plain error only. Although Fields objected to the § 2K2.1(b)(6)(B) enhancement, he did so because he claimed too tenuous a connection to the offenses the government identified as the bases for the enhancement. He did not specifically argue, as he does on appeal, that any of the offenses discussed by the government were not actually felonies or that the government had failed to prove them to be felonies. Because the legal basis for his objection to his § 2K2.1(b)(6)(B) enhancement is different on appeal than the one upon which he relied in district court, his argument is reviewed under the plain-error standard. *See Massey*, 443 F.3d at 819.

Fields argues on appeal the government failed to prove any of the potential bases for the § 2K2.1(b)(6)(B) enhancement were actually felonies. Fields does not apply persuasively the general principle the government bears the burden of proving facts that increase a defendant's Guidelines range to the record or the specific enhancement at issue. For such an error to be plain, the Guidelines

16

provision, or a case from this court or the Supreme Court, must directly resolve the issue. *See Lejarde-Rada*, 319 F.3d at 1291. Section 2K2.1(b)(6)(B) and the relevant commentary does not specifically provide the government must prove a purported basis for the enhancement is actually a felony absent a specific objection by the defendant. *See* U.S.S.G. § 2K2.1(b)(6)(B). Fields failed to reference any case from this court or the Supreme Court supporting his argumnent. Consequently, Fields's arguments fall short of the showing any error by the district judge was plain. *See Lejarde-Rada*, 319 F.3d at 1291.

D.    Section § 3B1.2(b) Minor-Role Reduction

Fields argues the district judge erred in failing to apply a two-level, minor-role reduction under § 3B1.2(b). He contends he acted as a mere broker or middleman to facilitate the gun sales. Because of his limited role in the transactions, he argues he should have received a mitigating-role reduction.

We review for clear error a district judge's determination of a defendant's role in the offense. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Section 3B1.2(b) provides a two-level reduction if the defendant was a "minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The defendant must prove by a preponderance of the evidence he is entitled to the reduction. *United States v. Rodriguez*, 751 F.3d 1244, 1258 (11th Cir.), *cert. denied*, 135 S. Ct. 310 (2014). In determining whether a defendant is entitled to a

17

mitigating-role adjustment, the district judge considers (1) the defendant's role measured against the relevant conduct for which he was held accountable at sentencing, and (2) his role compared to other participants in that relevant conduct. *Id.*

The district judge did not clearly err in declining to apply a minor role adjustment under § 3B1.2(b). *See Rodriguez De Varon*, 175 F.3d at 937-38. The PSI shows Fields was directly involved in approximately 30 transactions, resulting in the illicit sale of 38 firearms to Officer McKesey. Fields does not deny he brokered or acted as a middle man for each of these transactions; instead, he cursorily argues such a role amounts only to minor participation. Fields's role as a broker militates against a minor-role reduction, because it suggests the illicit firearms sales might not have occurred without his participation; therefore, he was a necessary component to the consummation of those transactions. *See Rodriguez*, 751 F.3d at 1258. Fields has failed to show the district judge's conclusion he was not entitled to a § 3B1.2(b) minor-role reduction was clear error. *See Rodriguez De Varon*, 175 F.3d at 937-38.

E.    Section § 3E1.1(b) Reduction for Acceptance of Responsibility

Fields argues the district judge erred in failing to apply sua sponte the one-level reduction of § 3E1.1(b), despite the government's refusal to move for the reduction. Fields asserts the government's motive for declining to move for the

§ 3E1.1(b) reduction was unconstitutional retaliation for his choice to enter a non-negotiated plea rather than accept a previously offered government plea.

We review a district judge's determination of whether a defendant has accepted responsibility for clear error and with great deference. *United States v. McPhee*, 108 F.3d 287, 289 (11th Cir. 1997). Once the district judge has determined a defendant has accepted responsibility, however, we review the application of the Guidelines de novo. *Id.* A defendant may receive a two-level reduction under the Guidelines if he "clearly demonstrates acceptance of responsibility for the offense." U.S.S.G. § 3E1.1(a).

Under § 3E1.1(b), a defendant receives an additional one-level reduction, if he qualifies for a § 3E1.1(a) two-level reduction and

> upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently . . . .

*Id.* § 3E1.1(b). The commentary explains, "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." *Id.*, cmt. n.6. In the context of U.S.S.G. § 5K1.1, we have explained

19

the government may not refuse to move for a downward departure based on a defendant's substantial assistance on an unconstitutional motive, such as a defendant's race or religion. *United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000).

The district judge did not err in failing to apply sua sponte a § 3E1.1(b) reduction. According to the Guidelines commentary, a government motion is required for the court to apply the reduction, and the government declined to file the motion in Fields's case. *See* U.S.S.G. § 3E1.1, cmt. n.6. Consequently, the judge could not have imposed the § 3E1.1(b) one-level reduction absent the government's motion.

Fields's argument the government's motive for declining to file a § 3E1.1(b) motion was unconstitutional is unconvincing. There is no indication in the record the government based its decision on an unconstitutional motive, such as Fields's race or religion. *See Nealy*, 232 F.3d at 831. Fields's claim the government's motive was his failure to accept a plea is unpersuasive, because he provides no support for that assertion beyond a cursory reference to a plea he did not accept. Fields provides no meaningful reason to doubt the government's stated reason for declining to file a § 3E1.1(b) motion was his failure to follow his pretrial-release conditions.

F.    Substantive Reasonableness

Fields argues his 10-year imprisonment sentence is substantively unreasonable because (1) he lacked a significant criminal history, and (2) the severity of the charges was increased by the undercover officers' decision to allow their operation to continue for so long.  We review the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591, 169 L.Ed.2d 445 (2007).  We consider whether the sentence was substantively reasonable in light of the totality of the circumstances.  *Id.* at 51, 128 S. Ct. at 597.  The party who challenges the sentence bears the burden of showing that it is unreasonable in view of the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  Among the factors a district judge must consider are (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, and (3) the need for the sentence to reflect the seriousness of the offense.  18 U.S.C. § 3553(a)(1)-(2).  Provided the sentence imposed is a reasonable one, we will not set it aside merely because we determine a different sentence would have been more appropriate.  *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc).  We set aside a sentence only if we determine, "after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable."  *Id.*  "The district court may determine on a case-by-case basis the

21

relative weight to give the Guidelines range in light of the other section 3553(a) factors." *United States v. Lozano*, 490 F.3d 1317, 1324 (11th Cir. 2007).

Fields has not shown the district judge abused her discretion in imposing a 10-year, below-Guidelines imprisonment sentence. *See Gall*, 552 U.S. at 41, 128 S. Ct. at 591. At the sentencing hearing, the judge explicitly discussed the mitigating factors Fields pursues on appeal, including his lack of criminal history and the government's conduct. *See* 18 U.S.C. § 3553(a)(1), (a)(2). Nevertheless, the judge's primary consideration in her decision to impose a 10-year imprisonment sentence was because Fields consciously chose to engage repeatedly in illicit gun transactions and brought friends and acquaintances into the scheme. *See* 18 U.S.C. § 3553(a)(1) (providing the judge shall consider "the nature and circumstances of the offense" in determining an appropriate sentence). Fields's argument amounts to a disagreement with the relative weight the judge  gave certain mitigating § 3553(a) factors, such as his lack of criminal history, with the weight she gave aggravating circumstances, such as his conscious and repeated engaging in firearms transactions. While that argument might show a lower sentence also would have been appropriate, it does not show the court's chosen sentence was unreasonable. *See Irey*, 612 F.3d at 1191. Fields has failed to meet his burden of showing his 10-year, below-Guidelines imprisonment sentence is

substantively unreasonable in view of the record and the § 3553(a) factors. *See*

*Tome*, 611 F.3d at 1378.

### III.    CLERICAL ERROR IN THE JUDGMENT

Although we conclude Fields's sentence is correct, there is a clerical error in

the judgment. The judgment imposing Fields's sentence incorrectly identifies 26

U.S.C. § 5845(a)(2), rather than § 5845(a)(3), as the statutory provision relative to

Count 7. Therefore, we sua sponte remand for the district judge to correct the

error. *See Massey*, 443 F.3d at 822 ("We may *sua sponte* raise the issue of clerical

errors in the judgment and remand with instructions that the district court correct

the errors.").

### IV.    CONCLUSION

Because Fields has not shown the district judge's Guidelines calculations

were incorrect or his sentence was substantively unreasonable, we affirm his 10-

year imprisonment sentence. Nevertheless, we vacate and remand for the limited

purpose of correcting a clerical error in the judgment.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**