**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DAVID PRIEN-PINTO,
*Defendant-Appellant.*

No. 18-30055

D.C. No.
9:17-cr-00025-DLC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Submitted December 7, 2018[*]
Seattle, Washington

Filed March 12, 2019

Before: William A. Fletcher and Jay S. Bybee, Circuit
Judges, and Larry A. Burns,[**] District Judge.

Opinion by Judge Bybee

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Larry A. Burns, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY[***]

### Criminal Law

Affirming a sentence, the panel held that the strict-liability enhancement of U.S.S.G. § 2K2.1(b)(4), for the commission of a crime with a stolen firearm, is constitutional.

Joining ten other circuits, the panel reaffirmed the holding of *United States v. Goodell*, 990 F.3d 497 (9th Cir. 1993), that the lack of a mens rea requirement in § 2K2.1(b)(4) does not violate due process. The panel wrote that subsequently-issued Application Note 8(B), directing courts not to impose a mens rea requirement, served as confirmation of *Goodell*'s analysis of the plain language and legislative history of the enhancement. Further, the Supreme Court's Sixth Amendment jurisprudence requiring that all facts leading to a sentencing enhancement beyond the statutory maximum be proven to a jury did not overrule the long-settled position that the Fifth Amendment permits a sentencing enhancement for possession of a stolen firearm to apply on a strict-liability basis.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John Rhodes, Assistant Federal Defender; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Missoula, Montana; for Defendant-Appellant.

Timothy A. Tatarka, Assistant United States Attorney; Kurt G. Alme, United States Attorney; United States Attorney's Office, Billings, Montana; for Plaintiff-Appellee.

**OPINION**

BYBEE, Circuit Judge:

We are asked to review the vitality of our 1993 holding that the Sentencing Guidelines may constitutionally impose a strict-liability enhancement where a defendant committed a crime with a stolen firearm. *See United States v. Goodell*, 990 F.2d 497 (9th Cir. 1993). Since that time, the Supreme Court has issued a number of opinions recasting the role the Guidelines play in a district court's sentencing decision. We conclude that none of these decisions affect *Goodell*. In holding once more that the strict-liability enhancement of § 2K2.1(b)(4) of the Sentencing Guidelines is constitutional, we join all ten of the other regional circuit courts.

I

David Prien-Pinto was convicted in Montana state court in 2014 of felony assault on a peace officer and burglary and sentenced to a term in state prison. He was released on parole in March 2016. After his release, a confidential source alerted a joint task force of federal and local law enforcement

officers that Prien-Pinto was selling narcotics out of his home in Missoula.  In September 2016, officers raided the home and arrested Prien-Pinto on marijuana and methamphetamine charges.  Shortly after, Prien-Pinto's wife reported to local police that she had hidden a Taurus Model 94 .22 caliber revolver ("the firearm") at Prien-Pinto's instruction.  Prien-Pinto admitted to possessing the firearm and told police that a friend had given him the firearm as payment for a marijuana debt.

Police traced the firearm's serial number and determined that it had been stolen the previous summer from its owner in Kalispell, about 120 miles north of Missoula.  The owner identified the firearm and told police it had been taken from the glove compartment of his vehicle during a break-in.  The owner denied knowing Prien-Pinto.

Montana authorities held Prien-Pinto on a parole violation.  He has remained in state custody since his arrest, serving a prison sentence on various state charges.  In August 2017, a federal grand jury indicted Prien-Pinto on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He pleaded guilty, without a plea agreement, in November 2017.

The district court sentenced Prien-Pinto to 36 months' imprisonment: 18 months to be served concurrently to his Montana state sentence, and 18 months to be served consecutively in federal custody.  In calculating Prien-Pinto's Guidelines offense level, the district court applied a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) because Prien-Pinto's crime involved a stolen firearm. Prien-Pinto objected to this enhancement, arguing that nothing in the record suggested he knew the firearm was stolen and that

application of the enhancement without a mens rea would violate his Fifth Amendment rights, or alternatively, the federal statutes criminalizing possession of a stolen firearm. The district court noted that "the facts are pretty compelling that Mr. Prien-Pinto did not have any knowledge that this firearm had been stolen." However, it held that Application Note 8(B) in the Commentary following § 2K2.1(b)(4)—which provides that the enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen"—was "not ambiguous." It thus applied the enhancement but invited us, on the record, to review the constitutionality of § 2K2.1(b)(4) and the Application Note.

## II

The constitutionality of U.S.S.G. § 2K2.1(b)(4)'s strict-liability enhancement is the only issue before us on appeal. We review a claim that the Sentencing Guidelines are unconstitutional de novo. *United States v. Padilla-Diaz*, 862 F.3d 856, 860 (9th Cir. 2017).

## A

All sentencing proceedings begin with the district court's calculations of the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Section 2K2.1 provides the offense levels for crimes like Prien-Pinto's, which involve unlawful receipt, possession, or transportation of firearms. Paragraph (b) provides a number of enhancements that increase the base offense level for firearm crimes, including this provision in subparagraph (4): "If any firearm (A) was stolen, increase by 2 levels; or (B) had an altered or obliterated serial number, increase by 4 levels."

U.S.S.G. § 2K2.1(b)(4).    In the Commentary section following § 2K2.1, Application Note 8(B) provides: "Knowledge or Reason to Believe.—Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number."    U.S.S.G § 2K2.1, App. Note 8(B).   In other words, this Application Note directs courts to apply § 2K2.1(b)(4)'s enhancements on a strict liability basis and not to read a mens rea requirement into the text of the provision.

Application Notes are not formally part of the Guidelines, but serve to "interpret[]" and "explain[]" the Guidelines for district courts.  *Stinson v. United States*, 508 U.S. 36, 38 (1993).   Like the Guidelines themselves, the Application Notes are drafted by the Sentencing Commission and may be revised annually.  *See id.* at 41, 45.   However, Congress lacks the power to modify or disapprove of Application Notes, as it may Guidelines.  *Id.* at 40.   The Supreme Court told us in *Stinson* that an Application Note "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Id.*; *see also id.* at 42–43 ("Commentary which functions to interpret a guideline or explain how it is to be applied controls, and if failure to follow, or a misreading of, such commentary results in a sentence selected from the wrong guideline range, that sentence would constitute an incorrect application of the sentencing guidelines." (internal citations, punctuation, and alterations omitted)).    The Court also analogized the Sentencing Commission's use of Application Notes to an agency's interpretation of its own legislative rules, and thus directed courts to apply Application Notes with the same force as other such interpretations.  *Id.* at 44–45.  Thus, we

ascribe somewhat less legal weight to the Application Notes than to the Guidelines proper: if the Guideline and Application Note are inconsistent, the Guideline prevails. *See id.* at 38.

After publishing *Stinson* in 1993, the Supreme Court issued a series of opinions that have dramatically altered the role the Guidelines play in sentencing. Most significantly, the Court struck down the federal sentencing statute making the Guidelines mandatory, finding it inconsistent with the Sixth Amendment. *United States v. Booker*, 543 U.S. 220, 245 (2005). However, we and the Supreme Court have continued to apply the holding of *Stinson* in the years following *Booker*. *See, e.g.*, *Freeman v. United States*, 564 U.S. 522, 529 (2011) (citing *Stinson*, 508 U.S. at 38) ("Guidelines commentary is authoritative[.]"); *United States v. Thornton*, 444 F.3d 1163, 1165 n.3 (9th Cir. 2006) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." (internal quotation marks omitted)). We thus follow *Stinson* in considering whether the district court properly applied § 2K2.1(b)(4) and Application Note 8(B) when calculating Prien-Pinto's sentence.

B

We considered and rejected a Fifth Amendment due process challenge to the lack of a mens rea requirement in § 2K2.1(b)'s enhancement for a stolen firearm in *Goodell*. At that time, the stolen-firearm enhancement was codified at § 2K2.1(b)(2), and the Sentencing Commission had not yet drafted Application Note 8(B), which first appeared in the

Guidelines in 2007.  *Compare* U.S.S.G. § 2K2.1 (1990) *with* U.S.S.G. § 2K2.1 (2007).

Working without the "authoritative," *Stinson*, 508 U.S. at 38, weight of this Application Note, we reached the result it now prescribes through sound construction of the Guidelines. We first scrutinized "[t]he plain language" of § 2K2.1(b) and found that it "does not require [a mens rea.]"  *Goodell*, 990 F.2d at 498.  Second, we examined the drafting history to determine whether the Guideline's text was a "deliberate" exception to the "rule of . . . Anglo-American criminal jurisprudence" that a penalty requires a mens rea.  *See id.* at 498–99.  Our review found that the Sentencing Commission "promulgated [the enhancement] on the premise that 'stolen firearms are used disproportionately in the commission of crimes.'"  *Id.* at 499 (quoting *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992)).  Because the Fifth Amendment permits a regulatory statute in the interest of public safety to provide for criminal liability in the absence of mens rea, *United States v. Freed*, 401 U.S. 601, 607–09 (1971), and because an enhancement for possession of a stolen firearm is rationally related to the goal of crime prevention, *Goodell*, 990 F.2d at 499 (citing *Mobley*, 956 F.2d at 454) (noting that stolen firearms are disproportionately used in the commission of crimes), we held that there was no Fifth Amendment violation.  *Id.*  In the end, strict liability "reflects the greater culpability of an ex-felon possessing a stolen weapon."  *Id.* at 501.

*Goodell*'s analysis of the plain language and legislative history of the enhancement seems to foreclose Prien-Pinto's argument that Application Note 8(B) is "a plainly erroneous reading" of § 2K2.1(b)(4).  *See Stinson*, 508 U.S. at 38. Through traditional techniques of construction, we had been

reading this enhancement to apply without a mens rea for fourteen years before the Sentencing Commission began directing us to do so. Application Note 8(B) simply serves as confirmation that *Goodell*'s reading has always been the correct one.

C

Prien-Pinto raises several arguments that *Goodell* does not control this case. He first argues that the Supreme Court's decision in *Booker* overruled *Stinson*, and—apparently—all other pre-*Booker* decisions about the constitutionality of the Guidelines, including *Goodell*. *Stinson*'s holding that the Application Notes carry authority akin to an agency's interpretation of its legislative rules, he avers, is now incorrect, and courts would thus violate the Administrative Procedure Act by giving the Application Notes the force of law because they are not promulgated through notice-and-comment rulemaking.

This argument misunderstands the case law. We relied upon neither *Stinson* nor the Application Notes in deciding in *Goodell* that the stolen-firearm enhancement does not carry a mens rea; rather, we based that holding on the text of § 2K2.1(b) alone. Thus, an overruling of *Stinson* would not abrogate our holding in *Goodell*. Moreover, *Stinson* has not been overruled. The Supreme Court, post-*Booker*, continues to cite its holding regarding the Application Notes as positive law—as do we. *See, e.g.*, *Freeman*, 564 U.S. at 529; *Thornton*, 444 F.3d at 1165 n.3.

Second, Prien-Pinto argues that *Goodell* is no longer good law because that decision relied on *McMillan v. Pennsylvania*, 477 U.S. 79 (1986). *McMillan* established a

three-factor test to determine whether a sentencing enhancement factor violates the Fifth Amendment. *Goodell*, 990 F.2d at 499–500 (citing *McMillan*, 477 U.S. at 87–88). Fourteen years after *McMillan*, the Supreme Court interpreted the Sixth Amendment to require that sentencing enhancements beyond the statutory maximum be based on facts proven to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 486–87, 490 (2000). The Court subsequently clarified that *Apprendi* did not disturb the *McMillan* due process standard in *Harris v. United States*, 536 U.S. 545, 563 (2002). However, eleven years later, the Court overruled *Harris* and questioned the "vitality, if not validity" of *McMillan. Alleyne v. United States*, 570 U.S. 99, 106 (2013); *see also id.* at 118 (Sotomayor, J., concurring) (expressing a view that *McMillan* was "wrongly decided"). Prien-Pinto argues that if *McMillan* is no longer valid, *Goodell* cannot be either.

We need not reach the question of *McMillan*'s continued vitality because, when we decided the portion of *Goodell* which controls this appeal, we neither relied on nor engaged with *McMillan*. Only after determining that the stolen-firearm enhancement did not carry a mens rea and that this strict-liability enhancement did not violate the Fifth Amendment did we turn to Mr. Goodell's separate argument that the enhancement was invalid under the standard of *McMillan. Goodell*, 990 F.2d at 499. In fact, we even transitioned into the *McMillan* portion of our opinion with the phrase "[t]he scienter issue aside . . . ." *Id.* Our subsequent analysis of whether the enhancement altered the statutory maximum penalty for Goodell's crime is not relevant to Prien-Pinto's appeal.

Third, Prien-Pinto urges us to distinguish *Goodell* because there, unlike here, the government and the defendant stipulated to the fact that the defendant did not know the firearm he possessed was stolen. *Id.* at 498. However, nothing in our analysis or holding in *Goodell* relied on this stipulation. Moreover, the district court here stated on the record at sentencing that "the facts are pretty compelling that Mr. Prien-Pinto did not have any knowledge that this firearm had been stolen," a finding we consider of equivalent force to a stipulation.

Fourth, Prien-Pinto argues that § 2K2.1(b)(4)'s strict-liability enhancement is in tension with the federal statute criminalizing possession of a stolen firearm, which does require a mens rea. *See* 18 U.S.C. § 922(j) (making it a crime to possess a stolen firearm or ammunition while "knowing or having reasonable cause to believe that the firearm or ammunition was stolen"). Because Application Note 8(B) may not stand if it "violates . . . a federal statute," *Stinson*, 508 U.S. at 38, Prien-Pinto avers that the statute's requirement of a mens rea disallows the Guidelines from imposing a strict-liability penalty for the same conduct. *See United States v. LaBonte*, 520 U.S. 751, 757 (1997) (holding that where an Application Note and the plain language of a federal statute are "at odds," the Application Note must "must give way"). However, we considered and rejected this statutory argument in *United States v. Ellsworth*, 456 F.3d 1146, 1150–51 (9th Cir. 2006), which we published after the Supreme Court's decision in *Booker*.

In *Ellsworth*, the defendant argued, like Prien-Pinto, that § 2K2.1(b)(4) was "at odds with Congress' plain language as expressed in 18 U.S.C. § 922(j)." *Id.* at 1151 (internal quotation marks omitted). We, however, distinguished

between § 922(j) as "an independent basis for criminal liability" and § 2K2.1(b)(4) as a mere "enhancement" applied only after liability has been established for the *separate* crime of being a felon in possession of a firearm, describing the provisions as only "superficially similar." *See id.* The enhancement, we reasoned, does not establish culpability for possession of a stolen firearm, but increases the penalty for a "small[] and distinct category of persons" who "may not legitimately possess *any* firearm," stolen or not: convicted felons. *Id.* (emphasis in original); *see also Goodell*, 990 F.2d at 501 (describing the "greater culpability" of a felon who possesses a stolen firearm). The provisions are thus fundamentally different, and we cannot assume that Congress intended to include an unwritten mens rea for the Guidelines enhancement because it included a written one for the statutory offense. Guessing at Congress's intent where the text is clear on its face is a dangerous game, and one that we have chosen not to play. *Ellsworth* thus has foreclosed Prien-Pinto's statutory argument.

Finally, Prien-Pinto argues that *Booker* represented a "sea change" which fundamentally altered due process jurisprudence on the Guidelines and compels a re-evaluation of *Goodell*. He relies on a lone opinion from the Eastern District of New York, *United States v. Handy*, 570 F. Supp. 2d 437 (E.D.N.Y. 2008), the logic of which has been rejected by the Second, Third, Sixth, and Eleventh Circuits.[1] *See United States v. Thomas*, 628 F.3d 64, 72 (2d Cir. 2010) (re-affirming a pre-*Booker* decision holding the lack of a mens rea requirement to § 2K2.1(b)(4) valid and noting "respectful disagreement" with *Handy*); *see United States v. Stokes*,

---

[1] The government did not appeal *Handy* to the Second Circuit; thus, that court did not have an opportunity to directly review the decision.

621 F. App'x 316, 320 (6th Cir. 2015) (rejecting *Handy*); *United States v. Fields*, 608 F. App'x 806, 812 (11th Cir. 2015) (same); *United States v. Black*, 386 F. App'x 238, 241 (3d Cir. 2010) (same).

Further, although the First, Fourth, Fifth, Seventh, Eighth, and Tenth Circuits have not addressed the *Handy* opinion, each has continued to apply § 2K2.1(b)(4)'s strict-liability enhancement in the years after *Booker*. *See United States v. Gonzalez*, 857 F.3d 46, 55–56 (1st Cir. 2017) ("[U]nlike a mens-rea-less criminal statute, the Guidelines may compound the punishment for the offense, but they fall far short of criminalizing apparently innocent conduct. . . . The history of the Guideline itself confirms that the omission was intentional[.]" (internal quotation marks and alteration omitted)); *United States v. Taylor*, 659 F.3d 339, 344 (4th Cir. 2011) ("[I]t is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." (quoting *Dean v. United States*, 556 U.S. 568, 575 (2009))); *United States v. Perez*, 585 F.3d 880, 883 (5th Cir. 2009) ("This court has continually enforced the clear and unambiguous language of § 2K2.1(b)(4) and its strict liability standard."); *United States v. Statham*, 581 F.3d 548, 553 (7th Cir. 2009) (applying § 2K2.1(b)(4)'s parallel strict-liability enhancement for use of a firearm with an altered or obliterated serial number); *United States v. Bates*, 584 F.3d 1105, 1109 (8th Cir. 2009) (applying Application Note 8(B) to impose the strict-liability enhancement); *United States v. Ellis*, 351 F. App'x 307, 309 (10th Cir. 2009) ("We like other circuits have long and unanimously held that Section 2K2.1(b)(4) lacks a scienter requirement.").

III

We join the unanimous ranks of these ten circuits and decline to reverse our longstanding precedent. We fail to understand how the Supreme Court's Sixth Amendment jurisprudence requiring that all facts leading to a sentence enhancement beyond the statutory maximum be proven to a jury overrules the long-settled position that the Fifth Amendment permits a sentencing enhancement for possession of a stolen firearm to apply on a strict-liability basis. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.